IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERNON HARRY,

        Plaintiff,

vs.                                    No. _____

THE UNITED STATES OF AMERICA and
SHABBAR HUSSAIN, M.D.,

        Defendants.

### COMPLAINT TO RECOVER DAMAGES FOR PERSONAL INJURIES RESULTING FROM MEDICAL NEGLIGENCE ARISING UNDER THE FEDERAL TORT CLAIMS ACT

    Plaintiff, by and through his attorney, William R. Keeler [KEELER & KEELER, LLP] and for his complaint against the Defendants, United States of America and Shabbar Hussain, M.D., states and alleges:

    1.    This is an action pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, et. seq. (hereinafter the "FTCA") for medical negligence at the Gallup Indian Medical Center ("GIMC") operated as an Indian Health Services medical facility located in Gallup, New Mexico.

### PARTIES AND JURISDICTION

    2.    Plaintiff Vernon Harry, a man who underwent medical care and medical treatments at "GIMC", Gallup, New Mexico, on or about April 28, 2016 through December 21, 2016, resulting in injuries to Mr. Harry, thereby granting jurisdiction and venue to this Court.

    3.    Defendant, United States of America ("United States"), through its agents, employees, and through the Department of Health & Human Services, Public Health Service, and Indian Health Service, are all federal agencies and at all times hereinafter mentioned, did and now do, operate a hospital entitled the "GIMC" in Gallup, New Mexico, where all claims of negligence arose.

4. Defendant Shabbar Hussain, M.D., was one of Plaintiff's physicians performing medical and surgical services at "GIMC" and providing medical treatment to Vernon Harry.

5. Upon information and belief, at all times material hereto, Defendant Shabbar Hussain, M.D., (hereinafter referred to as "Dr. Hussain"), a duly licensed doctor of medicine practicing medicine in the State of New Mexico and did practice medicine at the "GIMC" and was acting within the scope and course of his employment.

6. The tort claim for which Plaintiff sues herein arose from the acts and omissions of Defendants as alleged herein all occurring within the State of of New Mexico.

7. If the Defendant was a private person it would be liable to the Plaintiff in accordance with the laws of the State of New Mexico.

8. On March 02, 2018, within two years of the date of claims set forth herein which are subject to the FTCA, the admininstrative claims were presented to the United States Department of Health and Human Services, Public Health Service/Indian Health Service, pursuant to 28 U.S.C. §2675(a). Said agencies have denied Plaintiff's claim.

9. Plaintiff's counsel received a letter dated March 20, 2018 from the Office of the General Counsel/General Law Division that requested two more compact disks of all pertinent medical records, radiology, itemized billing, evidence of representation and any other information that may have a bearing on Mr. Harry's claim.

10. In response to the letter dated March 20, 2018, Plaintiff sent a Federal Express package on April 06, 2018 to Daniel F. Mendoza at the Office of the General Counsel that contained our evidence of representation and a total of eight (8) compact disks of Mr. Harry's medical records, medical billing, radiology reports/images from Gallup Indian Medical Center, University of New Mexico, University of New Mexico Health Sciences Center. Said agency did not respond.

11. Plaintiff's counsel received a letter dated August 03, 2020 that denied Mr. Harry's tort claim and to request a reconsideration or file suit within (6) months from the date of the letter.

12. On November 16, 2020, Plaintiff requested a reconsideration on his tort claim and received a letter dated August 23, 2021 again denying Mr. Harry' claim. The letter stated that if Mr. Harry was dissatisfied with the determination then he may file suit against the United States in the appropriate federal district court within (6) months of the date on the letter.

13. This Court has jurisdiction over the parties and subject matter hereto pursuant to 28 USC § 1346(b).

## COUNT I
## MEDICAL NEGLIGENCE

14. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 11 as though fully recited at length herein.

15. At all material times, Defendant through its medical providers, doctors, physicians and employees held itself out to be professional and qualified to care for the Plaintiff and owed Plaintiff the duty to exercise that degree of diligence and skill required of the average healthcare practitioner in their respective specialties.

16. At all material times, Vernon Harry was a patient of the Defendant.

17. On April 28, 2016, Mr. Harry was transported by MedStar Ambulance to "GIMC" for a left femur deformity and mild headache with neck pain after falling backwards from a stool he was leaning on in his home.

18. Mr. Harry was examined by Dr. Patrick Ignacio who diagnosed Mr. Harry with a left mid shaft femur fracture, closed head injury and neck strain. Dr. Ignacio admitted Mr. Harry for further treatment.

19. On April 29, 2016, Dr. Hussain operated on Mr. Harry for an open reduction internal fixation with one (1) plate, five (5) distal screws and two (2) cables to repair the femur fracture. Mr. Harry was discharged on May 03, 2016.

20. On May 23, 2016, Mr. Harry reported to his primary care provider that he was still in pain from the surgery and the doctor noted that he had limited range of motion due to the femur fracture.

21. Mr. Harry was examined by Dr. Hussain on June 17, 2016 and noted that Mr. Harry was only partially weightbearing with the use of crutches.

22. On July 17, 2016, Mr. Harry reported to the Emergency Room Department at Rehoboth McKinley Christian Hospital with complaints of severe left leg pain, swelling and tenderness. Mr. Harry was diagnosed with Deep Vein Thrombosis and was treated with Lovenox and discharged with instructions to follow up with the Orthopedic Doctor, Dr. Francisca Lytle at Red Rock Clinic.

23. Mr. Harry reported to Red Rock Clinic for his follow up with Dr. Lytle. After her examination of Mr. Harry, Dr. Lytle noted that there was tenderness medially along the left knee and the medial aspect of the left distal thigh. Dr. Lytle also noted that she did not see significant healing bone and noticed the screw appeared to be prominent posteromedially and thought it could be a factor to pain in Mr. Harry's distal thigh and knee.

24. On July 20, 2016, Mr. Harry reported to the Emergency Room at Rehoboth McKinley Christian Hospital with pain level 9/10 to his left upper leg that was worsened by movement, standing and walking. Mr. Harry was sent directly to Red Rock Clinic to be examined by Dr. Francisca Lytle. Dr. Lytle noted that it could be osteoarthritis, but could not rule out painful prominent screw. Dr. Lytle advised Mr. Harry to continue wearing the knee brace, to continue straight leg lifts and prescribed him Lortab.

25. Mr. Harry went back to see Dr. Lytle at Red Rock Clinic on August 02, 2016. Mr. and Mrs. Harry both reported that they felt a bump in the thigh shortly after the initial pain began. Dr. Lytle noted a prominence proximally and laterally which she thought was the proximal aspect of the plate and noticed Mr. Harry had some tenderness at the level of the fracture of the femoral shaft. Dr. Lytle encouraged Mr. Harry to continue following up with Dr. Hussain.

26. During Mr. Harry's examination on August 18, 2016, nearly four months post his surgery, he was examined by Dr. Hussain and it was noted that he was ambulating with a walker. Dr. Hussain advised Mr. Harry to continue activities as tolerated and to follow up with him in six (6) weeks.

27. On September 29, 2016, five (5) months post the surgery, Mr. Harry still has pain in his femur and Dr. Hussain noted that x-rays revealed adequate positioning, but not completely consolidated and he would continue his observation of Mr. Harry. According to the x-ray taken on September 29, 2016, the radiologist noted that the hardware was transversing the fracture of the femoral shaft and despite these findings, Dr. Hussain advised Mr. Harry to continue walking with crutches and to follow up with him in three (3) months.

28. On October 12, 2016, Mr. Harry reported to his primary care physician, Dr. Alma Alford, that his left thigh was extremely sensitive even to his clothing and was unable to wash his femur area while bathing. After Dr. Alford reviewed the x-rays with Mr. Harry, she noted that she was concerned about the superior portion of the fixation plate which seemed protuberant laterally. Dr. Alford wrote a referral for physical therapy and requested they review all the x-ray film and set up a consultation with the University of New Mexico Hospital Orthopedic Department for Mr. Harry.

29. The physical therapy department reviewed the radiology findings of September 29, 2016 and only noted that Mr. Harry had soft tissue restrictions and weakness in hip stabilizers due

5

to the surgery site and a 3cm leg discrepancy and devised an exercise plan for Mr. Harry. Although, Mr. Harry completed five (5) physical therapy sessions, he was still very limited in hip and knee range of motion and required frequent rest breaks with continued pain.

30. Mr. Harry was initially examined by the University of New Mexico Hospital Orthopedic doctors on February 23, 2017. Dr. Matthew Lilley and Dr. Daniel C. Wascher noticed that Mr. Harry had substantial deformity of the femur and had tenderness to palpation. After reviewing the radiology images, both doctors diagnosed Mr. Harry with hardware failure with nonunion of the periprosthetic femur fracture and noted that it appeared to be a Vancouver B2 with a loose femoral component. Mr. Harry was referred to Dr. Rick J. Gehlert for surgical management.

31. On April 04, 2017, Mr. Harry was examined by the University of New Mexico Hospital Orthopedic doctors, Dr. George Gill and Dr. Rick J. Gehlert and noted that the hardware in Mr. Harry's left thigh was palpable against the skin and the femur had a varus appearance to it. Both Dr. Gill and Dr. Gehlert again assessed Mr. Harry with hardware failure from his initial open reduction internal fixation surgery. Mr. Harry had his revision surgery on April 27, 2017 at the University of New Mexico Hospital.

32. At all times material hereto, the relationship of medical provider-patient existed between Plaintiff Vernon Harry and the licensed and practicing physicians, and other treating physicians, medical personnel and medical providers of "GIMC".

33. Pursuant to the provisions of the Federal Tort Claims Act, Defendant United States is liable for the negligent acts, omission, and errors of its employees or agents acting within the scope of their duties, as well as liable for any any all independent contractors who may be employed and under the control and direction of Defendant at its medical facilities.

6

34. At all times pertinent hereto, and as to all acts alleged herein, Dr. Hussain and others yet to be identified medical providers and personnel, were employees or agents of Defendant the United States, acting within the scope of their duties, and otherwise acting with the full knowledge and consent of Defendant the United States.

35. Defendant United States is therefore vicariously liable for the negligent acts of medical personnel as alleged herein.

36. Defendant Dr. Hussain had a duty to treat Plaintiff Vernon Harry with care to insure his healthy recovery and adequate care during and after his surgery.

37. In treating and caring for Plaintiff Vernon Harry, Defendant failed to exercise ordinary care which proximately resulted in injuries to Mr. Harry. Among other things, Defendant, by and through its employees, and other yet to be indentified "GIMC" staff, were negligent, without limitation, in the following regards:

    A. Failure to possess and apply the knowledge, skill, and care of reasonably well qualified practioners under similar circumstances for Mr. Harry;

    B. Failure to fully and properly operate on Mr. Harry when installing the hardware in his leg.

    C. Failure to use the utmost care when treating Mr. Harry after his surgery for his injuries;

    D. Failure to care for Mr. Harry for injuries, including but not limited to the failed hardware, that as a direct and proximate result of negligent treatment and care, required Mr. Harry to suffer physical and emotional injuries and to endure further medical treatments.

38. As a direct, proximate, and foreseeable result of Defendants' negligent acts and omissions, Plaintiff Vernon Harry suffered at least the following injuries:

A. A revision surgery to repair the hardware failure from the first open reduction internal fixation surgery;

B. Otherwise unnecessary hospitalization, treatment and intravenous medication;

C. Severe physical and emotional pain and suffering;

D. Constant pain, inability to walk, emotional distress, and loss of life's physical and emotional enjoyment;

WHEREFORE, Plaintiff Vernon Harry prays that judgment against Defendants be awarded in an amount reasonably necessary to compensate him for his damages and injuries as follows:

1. For compensable damages and costs;
2. For taxable costs as allowed;
3. For attorneys fees;
4. Pre and Post Judgment interest; and,
5. For such other and further relief deemed warranted under the circumstances.

KEELER & KEELER, LLP

William R. Keeler
235 West Historic Highway 66
Gallup, New Mexico 87301
Telephone: (505) 722-5608
Facsimile: (505) 722-5614
Email: billkeeler@keelerandkeeler.com
*Attorney for Plaintiff*